IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | 8:17CR61 |
| vs. | MEMORANDUM AND ORDER |
| SARA ELAINE BAILEY, | |
| Defendant. | |

This matter is before the Court on the Findings and Recommendation (Filing No. 42) of the magistrate judge recommending the Court grant Sara Elaine Bailey's ("Bailey") Motion to Suppress (Filing No. 25). The government objects (Filing No. 43) to the Findings and Recommendation, arguing the magistrate judge "erred in her conclusions of law." While the Findings and Recommendation are detailed and well-reasoned, based upon a de novo review of the evidence and the relevant Eighth Circuit precedent, the government's objection is sustained and the Motion to Suppress is denied for the reasons stated below.

I.   BACKGROUND

Around noon on September 1, 2016, Nebraska State Patrol Trooper Robert Pelster ("Trooper Pelster") was monitoring Interstate 80 three miles west of Seward, Nebraska. Trooper Pelster noticed an expensive Mercedes sport utility vehicle ("SUV") with Utah license plates. Trooper Pelster deduced the SUV was rented due to its age, color and the lack of dealer aftermarket features. The driver, Bailey, was traveling by herself and leaning back slightly in her seat. Deciding this merited further investigation, Trooper Pelster began to follow the SUV. Eventually, the SUV passed a semi-truck and moved back into the right-hand lane in front of the truck which put the truck less than five-tenths of a second behind Bailey when she completed the pass. Estimating Bailey only left two car-lengths between the SUV and the truck, Trooper Pelster initiated a traffic stop based

on what he determined to be an unsafe pass in violation of Nebraska Revised Statute § 60-6,133(1).[1]

Trooper Pelster spoke with Bailey and informed her that she would receive a warning for unsafe passing. He asked her to come back to his cruiser so he could ask her some questions while he checked her license and registration. Bailey complied, and while in the cruiser, she spoke with Trooper Pelster as he performed the background check. Bailey was traveling with a large dog which she left in the SUV.

In the cruiser, Trooper Pelster initiated a conversation with Bailey about her trip, her husband, and her criminal history. Bailey stated that she was returning to Salt Lake City from visiting a friend in Indianapolis who had just moved there. Her friend had a very small window of availability so Bailey only stayed for one day. Bailey added that she drove (rather than flew) because she was five months pregnant and because her dog was too large to fit on an airplane.[2] Bailey stated she was traveling by herself because her husband, whom she described as a "blue collar" worker, was at home working.

When asked about her criminal history, Bailey admitted that she had been arrested once before for driving under the influence ("DUI"). Trooper Pelster could not recall whether the offense involved drugs or alcohol. Trooper Pelster soon discovered Bailey had given an incomplete criminal history. Bailey's criminal-history check revealed Bailey had a fourteen-year-old burglary charge and a twelve-year-old battery charge that she failed to mention.

---

[1] "The driver of a vehicle overtaking another vehicle . . . shall first give a visible signal of . . . her intention and shall pass to the left of the other vehicle at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle."

[2] Bailey volunteered that the dog was traveling in the back portion of the SUV because Bailey was allergic to him. Bailey explained her allergies were normally not an issue, but she had to stop taking her allergy medication due to her pregnancy.

2

Trooper Pelster returned Bailey's documents and issued her a warning ticket. As Bailey began to exit the cruiser, Trooper Pelster inquired if he could ask a few more questions. Bailey agreed. Trooper Pelster explained that he was troubled by her itinerary, which consisted of four days on the road and only one day in Indianapolis. He also expressed concern at the over $1,600 cost for renting the luxury Mercedes SUV.[3]

Trooper Pelster asked Bailey if she was responsible for everything in the SUV and if it contained anything illegal. Bailey agreed she was responsible for everything in the vehicle but denied that there was anything illegal in the SUV. Trooper Pelster asked Bailey whether she was engaged in any illegal activity which Bailey denied.

Trooper Pelster requested permission to search the SUV and Bailey refused consent. Trooper Pelster then asked Bailey if she would remain until a canine unit arrived. Bailey reluctantly agreed.[4] With Trooper Pelster's permission, Bailey went back to the SUV to tend to her dog. Trooper Pelster told Bailey not to leave until the canine unit arrived.

When the canine unit arrived at the scene, another trooper deployed the drug dog around the SUV. The dog alerted.[5] Upon searching the vehicle, Trooper Pelster discovered $179,285 concealed inside the SUV, as well as a small amount of marijuana. As a result of the discovery, Bailey was transported to a State Patrol office where she made further statements.

---

[3]Trooper Pelster explained that he had made over 800 traffic stops during 2016, and he recalled only one of those vehicles had a rental cost of over $1,600. That vehicle, an SUV, had drugs hidden in its fuel tank.

[4]Trooper Pelster testified that when he asked for Bailey's consent to wait for the canine unit, she replied: "well, okay, but I wouldn't mind being on my way."

[5]A canine sniff which results in an alert on a vehicle gives rise to probable cause to believe drugs are present. *United States v. Bowman*, 660 F.3d 338, 345 (8th Cir. 2011). Here, defendant has not challenged the dog's reliability, only the detention while waiting for the canine unit.

Bailey has moved to suppress the evidence found inside the SUV as well as any later-acquired evidence, claiming the initial traffic stop was not based on probable cause, and that there was no reasonable suspicion to justify Bailey's continued detention pending the arrival of the canine unit. After a lengthy hearing during which Trooper Pelster was questioned at length, the magistrate judge recommended the Motion to Suppress be granted, finding for Bailey on both grounds. This Court respectfully disagrees with those conclusions.

## II. DISCUSSION

### A. Standard of Review

Under 28 U.S.C. § 636(b)(1), the Court may designate a magistrate judge to conduct an evidentiary hearing and submit "proposed findings of fact and recommendations for the disposition" of a motion to suppress. This Court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."[6] *Id.* "The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59(b)(3).

### B. Probable Cause to Stop

The Fourth Amendment prohibits the police from unreasonably seizing motorists. "[A] traffic stop is constitutionally reasonable 'where the police have probable cause to believe that a traffic violation has occurred.'" *De La Rosa v. White*, 852 F.3d 740, 743 (8th Cir. 2017). "Once an officer has probable cause, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant." *United States v. Fuehrer*, 844 F.3d 767, 772 (8th Cir. 2016).

Trooper Pelster testified Bailey violated a Nebraska traffic law when she made what the trooper believed to be an unsafe pass. Trooper Pelster, who likes "to see two

---

[6] Defense counsel erroneously asserts this Court is an "Appellate Judge" and claims that the factual determinations of the magistrate judge cannot be disputed unless "completely erroneous."

seconds" between vehicles for a safe pass, depending on the speeds of the vehicles and the volume of traffic, estimated Bailey left just "two car lengths, which was under five-tenths of a second" when she passed the truck. While the Nebraska statute does not specifically define what constitutes a "safe distance," or being "safely clear of the overtaken vehicle," the Eighth Circuit has previously determined "[t]he two-second rule . . . is a 'widely used rule of thumb that accounts for the speed of traffic' and is an appropriate measurement of whether a trailing car is maintaining a reasonable and prudent distance." *United States v. Lopez*, 564 F.3d 1001, 1003 (8th Cir. 2009) (quoting *United States v. Andrews*, 454 F.3d 919, 921-22 (8th Cir. 2009)).

Because the two-second measure can reasonably be used to determine whether a trailing car is following too closely behind another vehicle, it can also be reasonably used to determine whether a passing car leaves enough room behind it. Trooper Pelster had an objectively reasonable basis to determine Bailey was not safely clear of the truck she passed before moving into its lane, and he had probable cause to initiate a traffic stop. Even if technically mistaken, it was not unreasonable for Trooper Pelster to have believed Bailey had violated Neb. Rev. Stat. § 60-6,133(1). *See United States v. Sanders*, 196 F.3d 910, 915 (8th Cir. 1999).

### C. Reasonable Suspicion to Extend the Stop

Preventing an individual from leaving after the completion of a traffic stop is a separate seizure from the original traffic stop. *Rodriguez v. United States*, 575 U.S. ___, ___, 135 S. Ct. 1609, 1612 (2015). "A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Id.* (alterations in original) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). However, an extension of the stop, that is, a second seizure, can be justified, if the police officer has reasonable suspicion of other criminal activity. *Id.* at ___, 135 S. Ct. at 1616-17.

Here, the parties agree the traffic stop terminated when Trooper Pelster handed Bailey her license and registration along with a warning ticket. Although there might be some question about whether Bailey consented to the dog sniff of her vehicle, this Court need not decide that issue because the government conceded in its brief to the magistrate judge that Trooper Pelster "detained" Bailey to conduct a dog sniff of her vehicle. In light of that concession, Trooper Pelster's second seizure of Bailey was unconstitutional unless he had reasonable suspicion to extend the stop.

"To establish reasonable suspicion, 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' further investigation." *United States v. Woods*, 829 F.3d 675, 679 (8th Cir. 2016) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). "While 'reasonable suspicion' must be more than an inchoate 'hunch,' the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." *United States v. Fuse*, 391 F.3d 924, 929 (8th Cir. 2004) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

In reviewing an officer's justification for investigating further, courts must avoid a "divide-and-conquer analysis" that rejects each factor in isolation from another. *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). Measuring the total weight of the factors in combination does not consist of merely adding the probative value of each of the factors together because some of the factors may work symbiotically to create a whole that is greater than the sum of the parts. *See*, *e.g.*, *United States v. Bottone*, 365 F.2d 389, 392 (2d. Cir. 1966) ("The trier is entitled, in fact bound, to consider the evidence as a whole; and, in law as in life, the effect of this generally is much greater than of the sum of the parts.").

The Court is also mindful that "a law enforcement officer is 'entitled to make an assessment of the situation in light of his specialized training' and experience." *United States v. Huerta*, 655 F.3d 806, 809 (8th Cir. 2011) (quoting *Arvizu*, 534 U.S. at 276).

6

Yet a police officer relying on their training and experience may not simply identify behavior as suspicious without also explaining why "the officer's knowledge of particular criminal practices gives special significance to the apparently innocent facts observed." *United States v. Johnson*, 171 F.3d 601, 604 (8th Cir. 1999). Courts generally "require some explanation regarding how the officer's training endowed seemingly innocent facts with criminal significance." *Seymour v. City of Des Moines*, 519 F.3d 790, 798 (8th Cir. 2008). Reasonable suspicion, however, boils down to common sense, not technical rules. *See, e.g., United States v. Zamora-Garcia*, 831 F.3d 979, 983 (8th Cir. 2016).

Applying these standards and recent Eighth Circuit precedent finding "reasonable suspicion upholding the extension of traffic stops by officers relying on similar facts," *De La Rosa*, 852 F.3d at 744 (listing cases), the Court finds Trooper Pelster adequately stated "specific and articulable facts which, taken together with rational inferences from those facts, reasonably" justified briefly detaining Bailey to conduct a dog sniff of the exterior of her vehicle. *Woods*, 829 F.3d at 679 (quoting *Terry*, 392 U.S. at 21).

Trooper Pelster is a twenty-one year veteran of the Nebraska State Patrol. Relying upon his extensive background and experience in criminal interdiction, he found reasonable suspicion to detain Bailey following the traffic stop based on a number of factors, including her atypical rental vehicle, her "unusual [and] suspicious travel plans," *United States v. Beck*, 140 F.3d 1129, 1139 (8th Cir. 1998), and her failure to be fully forthcoming about her criminal history.

More specifically, Trooper Pelster was concerned Bailey had rented a luxury (Mercedes) SUV for a period of five days at the cost of over $1,600. Defense counsel inquired of Trooper Pelster: "Isn't it true, sir, that you think in your view as a traffic cop that drug traffickers use high-end rental vehicles?" Pelster responded that in his experience he was aware that drug traffickers sometimes utilize large, expensive rental cars. *See United States v. Walton*, 827 F.3d 682, 685 (7th Cir. 2016) (noting that in the

7

officer's experience "criminals generally rent luxury vehicles and that larger 'SUV' vehicles are better at concealing items").

Trooper Pelster also took into consideration the relatively short rental period given Bailey's travel schedule. Specifically, Bailey left what Trooper Pelster considered a major drug transportation hub, Salt Lake City, Utah, and drove for two days to a major distribution city, Indianapolis, Indiana. She stayed in Indianapolis only one day, and then immediately began the long trip back to Salt Lake City. *United States v. Zamora-Garcia*, 831 F.3d at 984-85 (explaining geographic origin can support a finding of reasonable suspicion). For that one day in Indianapolis, Bailey travelled approximately 1,600 miles each way. That is almost 3,200 miles in a vehicle with a dog to which she was allergic while five-months pregnant.

Trooper Pelster was also concerned that Bailey misrepresented her criminal history. Bailey failed to reveal, when asked, a twelve-year-old arrest for battery and a fourteen-year-old arrest for burglary (which she later explained was for conduct similar to shoplifting). Although a failure to be forthcoming in admitting previous arrests can sometimes be "consistent with innocent behavior," *United States v. Jones*, 269 F.3d 919, 920 (8th Cir. 2001), such a failure can reasonably cast suspicion on an individual, *see*, *e.g., United States v. Riley*, 684 F.3d 758, 764 (8th Cir. 2012). The fact that Bailey did identify a DUI arrest (again, Trooper Pelster could not recall if the charge was for drugs or alcohol), but did not identify other arrests (though not drug offenses) could certainly raise suspicion when viewed in concert with Bailey's other suspicious behavior.

Viewing the totality of the circumstances in this case, the Court finds Trooper Pelster had a sufficient objective justification to extend the stop.[7] *See id.*; *accord De La Rosa*, 852 F.3d at 744.

---

[7]That is not to say that the Court agrees with all of the factors relied upon by Trooper Pelster in this case. In close cases like this, law enforcement officers must be careful not to "pile on" irrelevant or common factors for the purpose of attempting to

8

In challenging Trooper Pelster's justification for detaining her, Bailey essentially employs the type of "divide and conquer analysis" that the Supreme Court and Eighth Circuit have rejected. *Arvizu*, 534 U.S. at 274. She claims that many of the individual concerns identified by Trooper Pelster were innocent. For example, Bailey argues the mere fact that she was a woman traveling alone with her dog should not raise any suspicion. And she explains her decision to drive rather than fly innocently resulted from her pregnancy and the size of her dog.

"But in making determinations of probable cause and reasonable suspicion, 'the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of noncriminal acts.'" *De La Rosa*, 852 F.3d at 744 (quoting *Sokolow*, 490 U.S. at 10). "Even where each factor cited by law enforcement to support a seizure is 'not by itself proof of any illegal conduct and is quite consistent with innocent' activity, the sum of the factors taken together can amount to reasonable suspicion." *Huerta*, 655 F.3d at 809 (quoting *Arvizu*, 534 U.S. at 274). In other words, even if each of the factors is only slightly probative, if the factors in combination amount to reasonable suspicion, then the seizure is constitutional even if no factor alone would constitute reasonable suspicion.

The Court agrees with Bailey that, standing alone, a pregnant woman traveling alone with her dog is not inherently suspicious and that there might be a number of innocent reasons to drive rather than fly. But when taken as a whole and viewed in conjunction with the other factors Trooper Pelster identified, Bailey's rental of a large, expensive luxury SUV in Salt Lake City to drive almost 3,200 miles by herself over four days—with a dog to which she was allergic—to spend just one day with a friend in

---

establish reasonable suspicion in response to a motion to suppress. For example, in its original brief opposing the Motion to Suppress, the government argued Bailey exhibited extreme nervousness manifested, in part, by Bailey's "throbbing carotid artery." The Court has reviewed the audio of the stop and finds that Bailey's discussion with Trooper Pelster does not evidence any nervousness, at least during the preliminary questioning. At any rate, the government no longer appears to rely on Trooper Pelster's arterial observation.

Indianapolis might well have raised (or at least added to) Trooper Pelster's reasonable suspicion of criminal activity.

**III.    CONCLUSION**

Trooper Pelster's initial seizure of Bailey and the extension of the stop to perform a drug sniff were in accordance with the Fourth Amendment and the evidence gathered as a result will not be suppressed.

Accordingly,

IT IS ORDERED:
1. The government's objection (Filing No. 43) to the magistrate judge's Findings and Recommendation is sustained.
2. The magistrate judge's Findings and Recommendation (Filing No. 42) will not be followed.
3. Defendant Sara Elaine Bailey's Motion to Suppress (Filing No. 25) is denied.

Dated this 24th day of August, 2017.

BY THE COURT:

s/ *Robert F. Rossiter, Jr.*
United States District Judge